tion against the real value of such capital and surplus, the amount invested in United States bonds and in stocks otherwise taxable. In the case last above cited, the court said, in deciding a like question:

"The individual citizen is allowed to deduct from the value of his personal property his debts, and such stocks as are otherwise taxable, and such other property as is exempt by law from taxation. In the case of the individual, the amount invested in United States bonds would be deducted if held in good faith. It is urged in the case at bar by the commissioners that, if the amount due depositors is deducted from the gross assets as a liability, it must have included the United States bonds owned by the relator, as they were doubtless purchased with money received on deposit, and that to deduct the amount again would be to deduct $220,000 of the deposits twice. We do not think this reasoning is sound. In ascertaining its apparent surplus, the relator is entitled to deduct the amount due depositors as a liability, and from that apparent surplus is to be deducted all the allowances accorded to the private citizen in the assessment of his personal property. If the relator elects in good faith to invest its apparent surplus in securities that are not taxable under the laws of this state, the assessing officer is bound by the statute to recognize its rights to do so. This rule of assessment has repeatedly been followed in this state. People v. Coleman, 135 N. Y. 231, 31 N. E. 1022."

This case arose under section 312, c. 409, Laws 1882, but the same rule applies to the tax law. The same rule was applied in People v. Feitner, 41 App. Div. 571–573, 58 N. Y. Supp. 713, where it was said:

"For the purpose of fixing the amount at which the relator should be assessed, we must start with the excess of assets over liabilities, and deduct therefrom the ten per cent. on the capital stock allowed by statute and the value of government bonds."

It cannot be claimed that the relator had any purpose of evading taxation, in investing its capital or surplus in United States bonds or other nontaxable securities, so as to be deprived of the right to deduction thereof, under section 6 of the tax law. We conclude, therefore, that the decision of the special term was correct, and that the judgment appealed from should be affirmed, with costs. So ordered. All concur.

---

MERCHANTS' NAT. BANK OF ALBANY v. ALTAMONT CLUB et al.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. MORTGAGES—TITLE IN TRUST—FORECLOSURE—FAILURE OF TITLE.

A promoter purchased land in his own name, agreeing to pay part of the price in cash, and to give his individual mortgage for the balance. Thereafter a club was incorporated, which paid the promoter the amount of the cash payment, which he paid to plaintiff, received a deed, and executed a mortgage. In a suit to foreclose the mortgage, and for a personal judgment against the promoter, the club filed a counterclaim setting up that the promoter purchased as agent of the club, that the title to the land had failed, and that plaintiff had made false representations of title, and praying that the deed and mortgage be canceled, and that plaintiff be compelled to pay back its money. *Held,* that such counterclaim was in effect a denial of the validity of the mortgage on the ground of fraud and failure of consideration, and neither fraud nor failure of consideration being shown on the trial, and the club not basing its defense on the covenants of the deed from M. to S., or offering to perform on its part on delivery of a good title, it was not entitled to relief in the foreclosure suit on the ground of defective title.

**2. SAME—FAILURE TO RESCIND.**

P., being indebted to M., gave him a quitclaim deed to land to secure an indebtedness, the deed providing that M. might sell the land on giving P. notice of his intention to do so. H. had an equitable claim on the land, arising from some arrangement with P. M. gave H. an option to purchase the land, offering to deed the land to any one he might designate. H. sold the land to S., and procured a deed to be made by M. to S. S. paid part of the purchase money in cash, and gave mortgages to M. and H. for the balance. M. procured an occupant of a part of the land, who claimed some interest in the premises, to quitclaim to S. *Held*, that in the absence of a showing that S. complained to M. of the condition of the title, or requested him to make the title good, or offered to rescind, it could not be said that the title could not have been remedied, and that therefore there was no such a failure of consideration as to render the mortgage to M. invalid.

**3. SAME—PURCHASER—SECOND MORTGAGE—CROSS BILL.**

Where, in a foreclosure suit, a second mortgagee and a purchaser from the mortgagor were made parties defendant, it was not proper for such purchaser to file an answer seeking to set aside such second mortgage on the ground of fraud, as such claim was the subject of an independent action between the purchaser and the second mortgagee, and was no part of the plaintiff's foreclosure suit.

Appeal from judgment on report of referee.

Suit by the Merchants' National Bank of Albany against the Altamont Club and others for foreclosure of real-estate mortgage. From a judgment in favor of plaintiff, the defendant club appeals. Affirmed.

This action was commenced in January, 1899. It was brought to foreclose a mortgage dated May 17, 1897, and given by the defendant Ole L. Snyder to the plaintiff as security for the payment of $20,000 in two equal annual payments, and covering 5,000 acres of land, part of great lot No. 8, in the Moose River tract, in Hamilton county. In the complaint it is alleged that the defendants the Altamont Club and Hall have or claim some interest in or lien upon the premises, which interest or lien, if any, has accrued subsequently to the lien of the mortgage. No personal judgment was asked against any defendant, except Snyder, who gave a bond in connection with the mortgage. None of the defendants answered, except the Altamont Club. It set up as a defense and counterclaim that it was organized on or about May 4, 1897, for the purpose of purchasing for club purposes the property described in the complaint; that upon its organization the defendant Snyder was elected a trustee and treasurer of the club, and conducted on its behalf all the negotiations and assumed charge of the business looking to the end of purchasing and acquiring title thereto, and that for that purpose the club placed in his hands the sum of $12,950; that, as a result of such negotiations, Snyder paid plaintiff the sum of $10,500, and gave the mortgage in suit, a deed being at the same date given by the plaintiff to Snyder; that in the same transaction Snyder paid from said moneys to defendant Hall $2,100, and gave him a mortgage on the premises, bearing date October 8, 1897, for $8,000; that the plaintiff and Hall represented to Snyder and to the club that the plaintiff had a good and perfect title to the premises, when in fact it had only a mortgage, and the deed it gave conveyed no title; that all of the said payments and instruments were made under a misapprehension or mistake of fact as to plaintiff's title, and the consideration thereof failed; that the defendant relied on the statements of the plaintiff and Hall, and had no notice of the defect of title till long afterwards. In general terms, it is alleged that the payments were obtained and the mortgages procured by false and fraudulent representations made by plaintiff and Hall to Snyder and the defendants. Relief was asked, that the deed to Snyder and the two mortgages given by him be canceled, and that the plaintiff pay back to the club the money which Snyder had paid. The answer of the club was served on defendant Hall. The referee held that the answer in effect alleged a conspiracy between the plaintiff, the defendant Snyder, and the defendant

Hall, whereby the club had been defrauded of its money; that the evidence failed to establish the alleged conspiracy, and, if it did, it would not avail the club in this action, as no personal claim was made against it, and it claimed no interest in the property proceeded against, so that the claim, if established, would only result in an independent judgment, not affecting the foreclosure prayed for, and therefore not admissible as a counterclaim. The judgment appealed from is the ordinary judgment in foreclosure.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Edward De Witt (Marcus T. Hun and Learned Hand, of counsel), for appellant.

Thompson & Andrews, for respondent bank.

Isaac Lawson, for respondent Hall.

MERWIN, J. The main questions upon this appeal are whether the defense and counterclaim set up are available as a counterclaim in this action, and, if so, whether they are established. The referee held in favor of plaintiff on both of these questions. It seems to be conceded that on and prior to December 24, 1895, Henry Patton held a perfect record title of the property in question. The defendant Hall claimed some equitable interest therein by reason of some arrangement with Patton. At the date above named, Patton executed and delivered to the plaintiff a quitclaim deed of the premises, for the consideration, as therein stated, "of one dollar and other good and valuable considerations." Upon the face of this deed it was stated that it was given as security for the payment of any and all liability or indebtedness then existing to the party of the second part [the plaintiff] from Henry Patton, or the firm of Patton & Co., upon paper made or indorsed by them; and it was also provided that "the said lands and premises shall not be sold or conveyed by the party of the second part except after fifteen days' notice to said Henry Patton of intention so to do, and then only to the person or party making the highest offer thereof." The amount of the indebtedness was not stated. On the 12th February, 1897, Hall, having made an arrangement with the plaintiff by which it agreed to take $30,000 for its interest in the property, and convey to whoever Hall might designate, and that he might have all he could obtain above that figure, gave to Snyder, in writing, an option until March 12, 1897, to purchase the property at the price of $40,000, payable $2,000 March 12, 1897, $10,000 April 12, 1897, and the balance in three equal annual payments, to be secured by bond and mortgage; Hall "to furnish a good and complete title search, free from all incumbrances." Thereupon Snyder, with three others, proceeded to obtain subscribers to a project for organizing a proprietary club for the purchase of the property under the terms of the option given by Hall. A meeting of these subscribers was held on May 4, 1897, and it was then determined to organize a corporation under the name of the Altamont Club. A certificate of incorporation was prepared and executed; nine persons being named as trustees, of whom Snyder was one. The certificate was duly approved, and was filed in the office of the secretary of state and the New York county clerk's office on May 20, 1897. A meeting of the named trustees was held on

May 4, 1897, and Mr. Snyder was chosen treasurer, and he was orally authorized to take charge of the business of looking after the purchase of the property on behalf of the club. He was a practicing lawyer. He testifies that he received from the board of trustees oral instructions to take title to the property; that he was instructed to take title and give bond. On May 7, 1897, an agreement in writing was made between plaintiff and Snyder by which plaintiff, for the price of $30,000, agreed to convey to Snyder the said premises "in fee simple, by a good and sufficient deed of conveyance, with covenants of warranty, free and clear from all liens, rights of dower, or other incumbrances," and Snyder agreed to pay the price as follows: $500 upon the execution of the agreement; $9,500 on or before May 17, 1897, at which date, upon payment of such sums, the deed was to be given, and a bond and mortgage given back for $20,000, payable in two equal annual payments, with interest semiannually. This agreement was made with the understanding between Hall and Snyder that the balance of the price named in the option of February 12, 1897, should be paid or secured to Hall. Snyder received as treasurer of the club $12,000, of which $10,000 was paid by him to plaintiff, and $2,000 to Hall. A warranty deed was executed by plaintiff to Snyder, bearing date May 17, 1897, acknowledged September 23, 1897, and recorded June 20, 1898. The consideration stated in this deed is "one dollar and other good and valuable considerations." The mortgage in suit was executed by Snyder to plaintiff, bearing date May 17, 1897, acknowledged September 23, 1897, and recorded June 20, 1898. Snyder also executed to Hall a mortgage for $8,000, bearing date October 8, 1897, and recorded October 13, 1897. It appears that the deed from plaintiff to Snyder had not on the 25th May, 1898, been delivered. The president of the plaintiff at that date so informed the secretary of the club upon inquiry made by letter on May 20, 1898. From this letter it appears that the secretary of the club, who was also a trustee, had at that date information that a deed had been executed from plaintiff to Snyder, and a bond and mortgage from Snyder to plaintiff, and a deed from Snyder to the club. Information was asked from plaintiff as to their delivery. The plaintiff had no contract with the club. Its agreement was with Snyder on May 7, 1897, which was before the filing of the certificate of the incorporation of the club. Snyder was acting in behalf of the club, but he was, as he testifies, to take the title himself and give back a bond. The evidence tends to show that such was the arrangement between the club and Snyder, and the club, in its answer, does not allege to the contrary.

It is argued upon the part of the appellant that the acts of Snyder subsequent to the signing of the contract with plaintiff were not within the scope of his agency, and that, therefore, as he in making that contract represented, in fact, the club, it can enforce the contract, and that, as the plaintiff's title is defective, it should refund the moneys of the club. The club is not seeking specific performance. It did not by any corporate action assume the contract. It does not offer to perform upon receiving good title, and evidently was not in a position to make the payments as they became due ac-

cording to the original option and contract. In its answer it claims no lien on the land for moneys paid. Its agent, Mr. Snyder, before executing the bond and mortgage examined the deed from the plaintiff to him, and also examined the search, upon which there was an abstract of the conveyance from Patton to the plaintiff, and a statement of the character of the conveyance. He was satisfied with the warranty deed from the plaintiff. He had previously learned that one Seymour was occupying some part of the property, and the bank thereupon, on demand from Snyder, obtained a deed from Seymour to Snyder bearing date August 9, 1897, and recorded June 20, 1898. On or about the 21st July, 1898, Mr. De Witt, the secretary of the club, and one of its trustees, called the attention of the board of trustees to the character of the conveyance from Patton to plaintiff, a certified copy of the deed being present. The plaintiff, so far as appears, was not called upon to remedy or provide for any defect. In December, 1898, the secretary, in corresponding with the plaintiff about the interest on the mortgage, and as to what might be done in case of foreclosure, made no suggestion that the mortgage was not valid, or that the title furnished by plaintiff was not good. We cannot say that if the plaintiff, at the time of the deed to Snyder, or at the time the board of trustees had knowledge of the alleged defect, had been called upon to remedy it, it would not have been able to do so. We may assume that the plaintiff knew that Snyder was acting in behalf of the club, and was paying to it the moneys of the club. We must also assume that it knew when the contract was made with Snyder that the club was not incorporated, and that by arrangement between the club and Snyder the latter was to take the title and give back a bond and mortgage. A purchaser who has made payments and is not in default may in some cases have a lien on the interest of the vendor in the premises for his payments, in case the vendor cannot give good title. 2 Sugd. Vend. p. 378 (marg. p. 67). But that principle is hardly applicable here, even if its benefit was here claimed. The proof is not, we think, sufficient to show that the mortgage was procured by any fraud upon the part of the plaintiff, or that the plaintiff was a party to any conspiracy to defraud Snyder or the club. The plaintiff had at least an interest as mortgagee, which passed by its deed. It procured to be conveyed to Snyder the possessory interest of Seymour. So that it is not apparent that the mortgage to plaintiff was without consideration. The remedy of a grantee in such a case, when, as in this case, there has been no eviction, is upon the covenants in his deed; and he cannot, on the ground simply of defect of title, resist foreclosure of a purchase-money mortgage. McConihe v. Fales, 107 N. Y. 404, 14 N. E. 285.

The appellant failed, I think, to show the invalidity of the mortgage. That being so, the plaintiff has a right to foreclose it; and the claim of the appellant is reduced to a claim simply for money, which would not tend to diminish or defeat the plaintiff's recovery, as no personal claim is made by plaintiff against the appellant. The appellant's claim, therefore, was not admissible as a counterclaim, and could not be determined in this action.

The appellant also claimed to set aside the mortgage given to Hall, and, by amendment allowed to its answer at the trial, claimed to recover of Hall the $2,000 paid to him by Snyder. This claim, if established, would not affect the plaintiff's right to foreclose. The judgment did not undertake to adjudicate as to the rights of any party to a possible surplus. There was no issue on that subject between the appellant and, Hall, as the appellant did not claim any lien on the real estate. The claim against Hall for the money paid him was the subject of an independent litigation. Kay v. Whittaker, 44 N. Y. 565; Lansing v. Hadsall, 26 Hun, 619. No good reason is. apparent for the reversal of the judgment, and it. should be affirmed.

Judgment affirmed, with costs. All concur.